WEISS LAW FIRM, PLLC
Reba Weiss, WSBA #12876
12537 15TH Ave. NE, Ste. No. 108
Seattle, WA 98125-3979
(206) 508-0149 / Fax (206) 508-5933
reba@weisslawfirm.org

UNITED STATES DISTRICT COURT

WESTERN DISTRICT WASHINGTON

| | |
|---|---|
| LISA MOORE, an individual;<br><br>PLAINTIFF,<br>v.<br><br>THE BOEING COMPANY, a Delaware Corporation and DOES 1-10;<br><br>DEFENDANTS. | CASE NO.:<br><br>COMPLAINT FOR DAMAGES BASED UPON:<br><br>RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. §2000e-3(a), et seq.)<br><br>[DEMAND FOR JURY TRIAL] |

Plaintiff LISA MOORE (hereafter referred to as "Moore" or "Plaintiff") alleges as follows:

## THE PARTIES

### PLAINTIFF

1. Plaintiff Lisa Moore, an individual, is a current employee of The Boeing Company, working in Seattle, Washington.

2. Plaintiff is, and at all relevant times herein was, an African-American female

1

employee of The Boeing Company, working at facilities in the City of Seattle of King County, in the State of Washington.

### DEFENDANTS

3. Plaintiff is informed and believes that Defendant The Boeing Company is a Delaware Corporation doing business, and employing over 16,000 people, in the State of California, with a major manufacturing and business facility in the City of Seattle, in the state of Washington.

4. At the time of the filing of this Complaint, Plaintiff is unaware of the true names and capacities of the Defendants, who are the employees, agents, representatives, co-conspirators and/or are otherwise acting on behalf of Defendant The Boeing Company (hereafter collectively referred to as "Boeing"), and therefore sues these persons using the fictitious names Does 1-10, inclusive. Plaintiff will amend the Complaint to allege the true names and capacities of the Doe Defendants when such have been ascertained. Defendants Boeing and Does 1-10 are sometimes hereafter collectively referred to as Defendants.

5. Plaintiff is informed and believes and thereon alleges, that each of the fictitiously named Defendants are in some manner responsible for the occurrences, acts and omissions alleged herein, and that Plaintiff's damages as alleged herein were proximately caused by such occurrences, acts and omissions of said Doe Defendants, and by each of them. When Plaintiff alleges conduct against any Defendant hereafter, said Defendant will include the named Defendants and Defendant Does 1-10.

6. Defendants Boeing and Does 1-10 were and are at all relevant times acting as the agents, partners, joint venturers and co-conspirators of each other, with each act or omission being perpetrated within the scope of the agency, partnership, venture or

conspiracy.

7. Plaintiff has suffered losses in excess of the jurisdictional minimum of the Court, which will be established according to proof at time of trial.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in the Federal Court because Plaintiff's case arises under federal law - Title VII, therefore jurisdiction is proper pursuant to 28 U.S.C. §1331.

9. Venue is proper in this District because the defendants and each of them have engaged in significant business operations, and the employment of thousands of personnel in King County of Washington, including a facility in Seattle, wherein Plaintiff is or was employed, and wherein each of the harms to Plaintiff complained of herein occurred.

## FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF MOORE

I. **Background**

10. Plaintiff Lisa Moore ("Plaintiff" or "Moore") is a 49-year-old African-American female currently employed by Boeing (or the "Company"), and has been employed at the Company for 21 years. She has a strong educational background and holds a Bachelor's Degree in Liberal Arts. She is also currently pursuing a Master's Degree in Human Resources Professional Studies & Employee Relations, with an emphasis in Labor & Employment Law. Except for the period between 2013 and 2015, during which Plaintiff worked in Philadelphia and various other worksites, Plaintiff was employed primarily at Boeing's Washington location.

11. During the period between 2013 and 2015, Plaintiff held the title of H.R. Strategic Business Partner, Level IV. Throughout this period, Plaintiff consistently received high performance ratings from her superiors. Plaintiff was highly regarded by her East Coast

Leaders, H.R. Peers, and SSG Leadership Team, and never had any complaints from the Executive Director, Directors, or Managers whom she supported. Superiors went so far as to refer to Plaintiff as a "Rock Star." She is a conscientious and reliable employee who at all times performs her duties in an exemplary manner and gets along well with colleagues and employers while maintaining a high level of professionalism. After Plaintiff's elderly mother fell ill in 2015, Plaintiff made a lateral transfer back to Washington.

12.  It was at this point in her career at Boeing that she began experiencing discrimination and harassment. As set forth in greater detail below, from the time period beginning in August 2015 through the present, Plaintiff has been subjected to consistent discriminatory treatment and harassment on the basis of race/color. Despite Plaintiff's many verbal, written, and formally filed complaints for Boeing to bring an end to the discriminatory and harassing conduct committed against her by supervisors and co-workers, the company has turned a blind eye to her plight.

## II.  Discrimination and Harassment

13.  After discussing her need to take care of her sick mother, Plaintiff's Senior HR Manager, Tammy Liter, offered Plaintiff a lateral transfer back to Seattle, WA. Plaintiff was told that she would be the HR Strategic Business Partner for 777X and would report to a woman named Andrea Calvert. 777X was an ideal opportunity and one that Plaintiff was really looking forward to. Soon thereafter, Plaintiff and Andrea Calvert held a virtual meeting. The two hit it off, and they established the foundation for a good working relationship. On April 28, 2015, as was discussed with Plaintiff, a formal company e-mail announcement was sent out stating that Plaintiff would be transferring to a development opportunity as HR Strategic Business Partner in Site Services NW Region, partnering with

777X, and reporting to Andrea Calvert.

14. However, on August 14, 2015, shortly before Plaintiff was scheduled to move back to Seattle for her new position at 777X, Plaintiff was told that her assistance was needed elsewhere, and that she had been reassigned as HR Strategic Business Partner for Global Staffing in Renton, WA, reporting to a Caucasian woman named Kari Shiflett ("Shiflett"). Plaintiff was later told that the previous individual who had the position could not handle the assignment, so Plaintiff's name was suggested. Plaintiff felt compelled to accept the reassignment despite the late and sudden notice because the lateral transfer was an attempt to accommodate her need to care for her mother. The new department that Plaintiff was assigned to consisted predominantly of female Caucasian employees. Plaintiff was one of two African-American employees in the department.

15. On August 22, 2015, Plaintiff was instructed to report her new manager Shiflett. Shiflett gave Plaintiff incorrect information regarding reporting to the building, which Shiflett knew required badge access clearance that Plaintiff did not have.

16. As of December 11, 2015, Plaintiff's Performance Management ("PM") and Business Goals & Objectives ("BGO") ratings were "Exceeds," and her IPA rating, which in large part determines employee salaries, was "Highly Effective." To wit, the rating of "Highly Effective" is the second highest possible IPA rating that an employee can receive. These ratings are indicative of those received the majority of her career as a Boeing employee.

17. The following year, on February 25, 2016, Shiflett noticed Plaintiff for a "one-on-one" meeting without providing context of what the meeting would be about. Shiflett opened the meeting by acknowledging that Plaintiff was highly regarded by her superiors

and colleagues on the East Coast, but continued by saying, "everyone seems to think you're a Rock Star, but I don't see it." Plaintiff was shocked and dumbfounded by the statement, and was only able to respond with a "Wow." Shiflett took baseless offense at Plaintiff saying "Wow," and began to rebuke and intimidate her. Plaintiff felt progressively more attacked, and thereafter began writing down what was happening in the meeting. Shiflett retaliated to that action by saying, with increasing hostility, "Why are you writing down what I'm saying when I'm trying to meet with you?!" Shiflett persisted in an inappropriate and hostile manner to intimidate and reproach Plaintiff, until she caused Plaintiff to cry in the meeting. Plaintiff, in tears, gave light feedback out of fear that Shiflett's angry behavior would intensify, and left the meeting as soon as she was able.

18. Two days after, on February 27, 2016, Plaintiff filed her first complaint with Boeing's EEO, Ethics, and Corporate H.R. Plaintiff met with Laura Best ("Best"), a Caucasian woman from Corporate H.R. regarding Plaintiff's H.R. Confidentiality Form, and shared how she had been improperly treated by her manager, H.R. Senior Leader, Kari Shiflett. No action was taken, so on March 7, 2016, Plaintiff filed additional complaints with EEO and Corporate H.R.. On March 16, 2016, Plaintiff e-mailed Corporate H.R. Executive Director Joanne Mortenson ("Mortenson"), a Caucasian, requesting a meeting to discuss Shiflett's behavior towards Plaintiff. Shiflett was supposed to meet with Plaintiff about her development plan, but instead Shiflett started the meeting by asking Plaintiff if she trusted Shiflett, to which Plaintiff responded that she did not. Shiflett retaliated against Plaintiff's statement by intimidating and threatening to relieve her of her position and have her placed elsewhere.

19. Though Plaintiff contacted EEO, Ethics, and Corporate H.R. numerous times, and much back and forth took place, no investigation was conducted, nor was Plaintiff's statement taken. Since the time of filing a complaint against Shiflett, Plaintiff had been effectively "blackballed."

20. Plaintiff was given a PM for the time period of January 2016 to March 2016 by Shiflett, and gave Plaintiff the low ratings of "Met" for BGO and "Met" for Performance Values. These ratings were given to her without taking into consideration Plaintiff's quality of work. Rather, Shiflett based these ratings on her unwarranted and unreasonable bias against Plaintiff.

21. On May 29, 2016, Plaintiff started a new assignment for SSG Supplier Management H.R. under Caucasian Senior H.R. Manager Kim Hasson ("Hasson"). A new PM was created for Plaintiff's new assignment during the time period from May 29, 2016 through December 31, 2016. Plaintiff was given a rating of "Exceeds" in both BGO and Performance Values by her new manager, Kim Hasson. However, this rating did not reflect the rating that Hasson gave her on her IPA rating, which included three bullet points with explanations validating the decision, contradicting the rating given to Plaintiff from H.R. policy.

22. A few days after Plaintiff sent Hasson the e-mail, the two had a virtual meeting, during which Hasson notified Plaintiff that her IPA was changed from "Effective" to "Highly Effective." However, when Plaintiff asked if her salary would reflect the change, she was told that it would not. That same day, Plaintiff spoke with Executive H.R. Director Mortenson, who confirmed that her IPA rating was changed from "Effective" to "Highly Effective." Although standard practice at the Company was to determine raises in salary by

performance ratings, Plaintiff was again told that she would not see her "Highly Effective" rating reflected in her salary. Further, Mortenson declared that this decision was made by the Compensation Department. This was untrue. Compensation does not dictate salaries; the manager who gives the ratings is responsible for determining salaries within a set range.

23. In another instance occurring on August 26, 2016, Caucasian male Boeing employee, Marc Garrett ("Garrett"), exerted aggressive behavior towards Plaintiff. Garrett, Executive Director in Plaintiff's suite and Skill Captain in the team created by Plaintiff, exhibited threatening body language while he and Plaintiff were alone in an office to meet and discuss the department's promotion fund. While writing on a white board, Garrett abruptly and forcefully swung his arm high through the air in an arching motion towards Plaintiff. Simultaneously, Garrett yelled at Plaintiff something along the lines of, "No! We're NOT going to talk about that right now!" Plaintiff was taken aback and shocked at Garrett's inappropriate and unprovoked behavior, and feared for her safety.

24. Despite Plaintiff's repeated attempts at reaching out to H.R. Director Lenee Hildenbrand ("Hildenbrand"), Garrett failed to meet with Plaintiff regarding the incident with Garrett. Adding insult to injury, Hildenbrand, however, met with Garrett to discuss the incident from his perspective.

25. The next month, on September 23, 2016, another incident occurred. Caucasian female Boeing employee, Kathy Jacobs ("Jacobs"), visited Plaintiff in Plaintiff's office to have a casual "one-on-one" meeting. Jacobs closed the door to Plaintiff's office and spoke to Plaintiff in a hostile tone. The conversation escalated quickly as Jacobs, unhappy with Plaintiff's opinion, slammed her hands down onto Plaintiff's desk and threatened to tell Hildenbrand – Plaintiff's new manager – that Plaintiff refused to work with Jacobs. Plaintiff

calmly requested that Jacobs leave the office, but Jacobs, belligerent and incensed, refused to leave. Plaintiff repeated her request for Jacobs to leave, but to no avail. At that point, despite having done nothing indecorous, Plaintiff decided to leave her own office to avoid further conflict.

26. In the aftermath of this incident, manager Hildenbrand held a "Working Together Meeting" for Plaintiff and Jacobs. After this meeting, Jacobs admitted in an e-mail to behaving inappropriately and apologized accordingly. However, Jacobs did not admit to slamming her hands onto Plaintiff's desk, claiming that she "didn't recall" everything that happened during the incident. Jacobs further did not admit to threatening to accuse Plaintiff of being unwilling to work with her.

27. On December 15, 2016, H.R. Director Hildenbrand closed out Plaintiff's final PM, dropping Plaintiff's BGO's from "Exceeds" to "Met," and Plaintiff's Performance Values from "Exceeds" to "Met." This drop in ratings was unwarranted and did not take into consideration Plaintiff's work statement, projects, and awards. After a lengthy conversation with Hildenbrand in defense of Plaintiff's performance merits, Hildenbrand stated her rating drops would be reversed. Hildenbrand further stated that Plaintiff should have spoken to Garrett directly regarding the incident during which he yelled and was physically intimidating. She also chastised Plaintiff for the way in which she handled the incident involving Kathy Jacobs – despite the fact that Plaintiff calmly removed herself from her own office in order to avoid conflict.

28. In addition to the antagonizing and inappropriate incidents with Shiflett, Garrett, and Jacobs, the inequitable and unduly tense relationship with manager Hildenbrand, and the constant barrage of discriminatory microaggressions from her

Caucasian peers and supervisors, Plaintiff was assigned a grossly excessive workload. On December 22, 2017, Plaintiff sent an e-mail about her work statement for 2017. Plaintiff was supposed to continue supporting two Executive Directors, the Skill Team, and the corresponding employees. After speaking with her peer, Rachel Catlin, Plaintiff was told that she would be taking all managers as well – over 22 managers, 310 employees, Lead Skill Team (with 9 managers), and Intern Focal. This workload was later confirmed to Plaintiff by Hildenbrand on January 13, 2017. Typically, this workload is a job suited for four people, but Plaintiff was expected to handle it on her own.

29. Plaintiff was treated discordantly from her fellow Caucasian co-workers for absolutely no reason. Plaintiff's Caucasian supervisors behaved coldly, hostilely, unfairly, and/or unethically toward her with regularity since Plaintiff has worked at the location. Plaintiff always carried herself in an appropriate and considerate manner, and maintained a respectful politeness to everyone that she worked with, and consistently produced quality work product.

30. On April 24, 2017, Plaintiff filed an Administrative Complaint with the EEOC, in compliance with the applicable provisions of the government code. Thereafter, on May 15, 2017, the EEOC issued Moore a Notice of Case Closure, and attendant Right to Sue notice authorizing this lawsuit. A true and correct copy of the Right to Sue Notice is attached hereto as Exhibit 1.

31. Due to the conduct described in paragraphs 10 through 31, above, on May 23, 2017 Moore filed a civil complaint asserting five (5) causes of action for race and age discrimination in violation of Title VII, race and gender harassment in violation of Title VII, and intentional infliction of emotional distress (the "Original Action"), in this same court

bearing Case Number 2:2017-cv-00800, the Honorable Thomas S. Zilly, presiding.

### III.     Retaliation After Filing of Original Action

32.     On May 31, 2017, Plaintiff served Boeing with the Summons and Complaint in the Original Action.

33.     On June 27, 2017 Plaintiff's supervisor Senior H.R. Manager Nitin Bahgat ("Bahgat") sent an email to Plaintiff requesting she "swing by when you're done" with a meeting Plaintiff had scheduled to host.  Plaintiff went to Bahgat's office and was immediately told Plaintiff that a complaint was made against Plaintiff.  Bahgat proceeded to tell Plaintiff he had a discussion with Moore's previous manager Jasmine Umagat ("Umagat") and they decided to issue Plaintiff a verbal warning for Failure to Act (3E – Boeing ECAPR/Corrective Action Guide), and that Bahgat was going to call Moore's H.R. representative Laurie Spiegel ("Spiegel") to follow-up with Policy 5 (EEO Guidelines). Plaintiff immediately protested and expressed disagreement. Bahgat called Spiegel in Moore's presence and Moore told them both she didn't agree and that she didn't discriminate against anyone.  Spiegel said the allegation against Moore was that another manager was subject to a discrimination claim, and Moore failed to act.  This verbal warning was documented, and included in Moore's personnel file.

34.     On March 30, 2018, Moore was deposed for a full day in Seattle, Washington by defense counsel for Boeing in the Original Action.

35.     During her deposition Moore testified clearly and truthfully regarding the above-described incidents with Shiflett, Garrett, Jacobs, Hildenbrand, and others.

36.     At all times herein, up to and including the current date, Plaintiff has been employed with Boeing.

37. From April 2 to 4, 2018 Bahgat repeatedly walked directly into Moore's cubicle and made it a point to invade her personal space by looking over her shoulder. Bahgat was repeatedly trying to see what Moore was doing on her computer, and his close physical presence and intimidating posture made Moore feel very uneasy.

38. On April 19, 2018 Moore attended her EAHI Team Meeting and asked a qualifying question regarding the guest speaker who Moore invited, and Moore believed did a fantastic job. Moore also asked her team if they thought it was a good idea, and did they find it useful for this guest speaker to speak. Bahgat strangely asked Moore why she asked her team that question.

39. On April 23, 2018 Plaintiff and Bahgat had a meeting entitled Nitin & Moore tag-up. Bahgat asked Moore if she wanted to discuss anything, and Moore told him yes that she wanted to discuss her PM. Bahgat responding in a shocked fashion, and asked "right now?" Moore shared that they never completed her PM, and didn't recall a due date. Bahgat told Moore she was fine, and to schedule the PM when she could.

40. During this same meeting Bahgat stated he had two questions for Moore and opened up his notebook to read from it, and to simultaneously take down her answers. Bahgat's first question to Moore was why did she ask the question about the guest speaker to her team on April 19, 2018, and did Moore think her team was ganging up on her. Moore expressed shock, and, told Bahgat no, she did not think her team was ganging up on her. Bahgat in response also appeared shocked at Moore's response. Moore told Bahgat (as she stated during the earlier meeting), she asked her team the question because Moore thought it was a great idea, and Moore wanted to know if her team found it useful as well.

41. Second, Bahgat questioned Moore about NFIS's and pointed out Moore

needed to be more adaptable. Moore again expressed shocked because she told Bahgat in a past conversation that Moore may need Bahgat's help if he wasn't able to get a response from Hannelie Grobbelaar, but would use this as a last resort due to wanting to preserve a positive working relationship.

42. On April 24, 2018 Moore arrived at work early due to an all-day event taking place April 24 to 26, 2018. When Moore arrived at the conference room there was an open seat, and Moore sat down in it. When the event started, Bhagat sat down next to her. Bahgat proceeded to tell Moore, "I see you were here early and I saw your email." Bahgat proceeded to asked Moore where she sat to work, and she responded that she got a room. Moore felt this exchange was unusual and creepy, and made her very uncomfortable.

43. On April 26, 2018 Moore was returning from a Corporate All Team Meeting that her team had to attend in a conference room away from the Face to Face offsite. As Moore re-entered the off-site meeting, she realized she had items to toss in her Starbucks bag. As Moore walked in, Bahgat met Moore at the door and held it open for her. Moore told him "thank you" and realized she needed to toss her bag, so Moore turned around, and walked out to throw some things in the garbage can (which was located right around the corner). As Moore turned to leave, Bahgat was right behind her in very close physical proximity. Moore felt that Bahgat was following her and attempting to intimidate her.

44. After an April 26, 2018 meeting, Moore's co-worker Judy Jolly ("Jolly") called Moore to inform her that Bahgat advised Jolly that he did not want Moore working alone.

45. On May 2, 2018 Moore met with her "Meeting Buddy" Jennifer Roberts ("Roberts") who is the project manager for their entire team. Roberts told Moore that she

met with Bhagat and Cathy Matthews ("Matthews") regarding the teams work statement. Roberts told Moore she was writing down what they all did for their work statement, and visually reviewed it with Moore. Moore took this as a form of unwarranted scrutiny.

46. On May 3, 2018 Courtney Rode ("Rode") wanted to schedule a meeting regarding Moore's EAHI Alumni Council with her, with no meeting content, but rather to pick Moore's brain. Moore told Rode she had access to the SharePoint, but Rode still wanted to meet, so Moore scheduled a ½ hour tag-up. Moore then sent Rode an email requesting a blurb so that Moore could prepare, and Rode responded verbally, and with no email response. Rode told Moore she was writing down what everyone does on Moore's team, and she was not going to immediately do anything with the information. Moore took this as more unwarranted scrutiny.

47. On May 3, 2018 Moore requested to start at 6:00am versus her normal start time of 7:00am via email, and followed up with an IM to view her email when time permitted. Bhagat came over unannounced behind Moore who was sitting down, looked over her shoulder while she was working, and stated in Moore's work area with (Judy Jolly and Anna Gallagher present) what email she was supposed to read. Moore had to stop what she was doing to find the email, only for Bahgat to say "oh that email." Moore felt uncomfortable with Bahgat's physical presence so close to her person, and felt it was a form of unwarranted scrutiny, and intimidation.

48. On May 11, 2018 Bahgat humiliated and embarrassed Moore during a meeting she was leading, and as a result Moore sent him an email to express her concerns which made Moore feel even more horrible and stressed. After sending the email, Bahgat was aware Moore was taking her mom to the doctor and he continuously emailed, texted and

even called, knowing Moore was with her mother and her doctor. Moore felt Bahgat was just piling on more unwarranted scrutiny.

49. On May 31, 2018 Bhagat asked Moore to send him information regarding NFIS (Non Fully Integrated Subsidiaries), and Moore sent him a high level email on the status the day before. Moore sent Bahgat the information on May 31, 2018 with the intent they would discuss it during their June 1, 2018 meeting. Moore, Bahgat and others had an EAHI Team meeting, and Cathy Mathews ("Mathews") made it a point to say Bahgat added last minute items, (that he was to discuss one-on-one with Moore), but were put on the agenda without Moore's knowledge. At the meeting, Bahgat tore into Moore like a drill sergeant which was very embarrassing to Moore. Most of the meeting was spent with Bahgat drilling Moore after she presented her portion of the meeting. Moore took this as just heaping more unwarranted scrutiny, and this time in a very public setting.

50. On June 22, 2018, Moore set up a meeting with Bhagat regarding seeking permission to work virtual on Mondays. Bahgat told Moore he would have to check with leadership, but he is Moore's manager, and did approve it.

51. One June 28, 2018 Bahgat sent Moore an email stating he checked page two of her Connect Plan, and said there were no names associated with sources of feedback. Bahgat told Moore to go ahead and send him specific names, and Moore could gather feedback. Bahgat then stated there was no need to do a survey after all. However on July 3, 2018, Moore took it upon herself to commence the survey anyway, as she felt Bahgat's representation that there was no need to do a survey, was simply an effort to set her up for failure and be subjected to further criticism.

52. On July 2, 2018 Bhagat (who was on vacation), sent emails to second guess

and undercut Moore's innocuous email request confirming the support roles of personnel at various functions at Iowa State University and the University of Puerto Rico.

53. Since May 11, 2018 Moore's workload has doubled.

54. Moore was so overwhelmed by Bahgat's antics and misconduct that on July 10, 2018 she left work due to suffering from stress, and an anxiety attack. Moore took two days off and during which time she suffered crying spells. At this time, Moore sent a complaint to HR Director Nicole Graves to meet with her regarding Bahgat's behavior.

55. On July 18-19, 2018 Moore called out sick from work due to the stress and anxiety caused by Boeing's retaliatory conduct.

56. On July 20, 2018 Moore returned to work at Boeing. When Moore returned, Bahgat insisted on engaging Moore in conversation about how things were going. Moore responded that she was present, and ready to work. During this exchange Bahgat glared at Moore intensely and negatively, which caused her to feel intimidated and uncomfortable by Bahgat's physical presence.

57. On July 25, 2018, Moore filed an administrative complaint with Boeing's EEO and Ethics office regarding the above retaliatory conduct. On this same date, Moore also sent an email describing Bahgat's retaliatory conduct to HR President Heidi Capozzi, and Senior Vice President Wendy Williams. Even after making these complaints, Moore was retaliated against by Bahgat and Grave that very same day.

58. On August 29, 2018, Plaintiff filed an Administrative Complaint with the EEOC, in compliance with the applicable provisions of the applicable codes and regulations. Thereafter, on August 29, 2018, the EEOC issued Moore a Notice of Right to Sue authorizing this lawsuit. A true and correct copy of the Right to Sue Notice is attached

hereto as Exhibit 2.

## FIRST CAUSE OF ACTION

**(RETALIATION BASED UPON ENGAGEMENT IN PROTECTED ACTIVITY IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 AS CODIFIED UNDER 42 U.S.C. §2000e-3(a), et seq.)**
**(By Plaintiff Against Defendant The Boeing Company; and Does 1-10, inclusive)**

59. Plaintiff hereby incorporates by reference and re-allege each and every allegation contained in Paragraphs 1 through 58, inclusive, as if fully set forth herein.

60. 42 U.S.C. §2000e-3(a) prohibits retaliation against former and current employees who engage in protected activities. An employee engages in protected activities when an employee opposes any practices made an unlawful employment practice by Title VII, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

61. As a result of engaging in protected activities, the employer must subject to the employee to an adverse employment action, and there must be a causal link between the protected activity and the adverse action.

62. Adverse actions are those employer actions that would have been materially adverse to a reasonable employee such that they could dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern v. & Santa Fe Ry. Co.* (2006) 548 U.S. 53, 57.

63. Defendant is an "employer" as defined under Title VII, and is subject to its prohibitions.

64. Plaintiff is an employee under Title VII and is subject to its protections.

65. Plaintiff engaged in protected activities as set forth in the Factual Allegations

contained in paragraph Nos. 10-56, and are incorporated herein by this reference.

66. As a result of Plaintiff engaging in protected activities, Defendant subjected her to adverse employment action(s), as set forth in the Factual Allegations contained in paragraph Nos. 33-56, and are incorporated herein by this reference.

67. There is a causal link between Plaintiff engaging in the above described protected activities and the Defendant's adverse employment actions taken against Plaintiff as set forth in the Factual Allegations contained in paragraph Nos. 10-56, and are incorporated herein by this reference.

68. As a result of Defendant's retaliatory conduct, Plaintiff has suffered both economic and non-economic damages. Additionally, in committing the above-described acts, Defendants acted in a willful, oppressive and malicious manner towards Plaintiff and with the intent to vex, annoy, injure and harass Plaintiff in complete disregard to the harm that this conduct would cause. Plaintiff is therefore entitled to punitive damages in an amount according to proof at trial against all Defendants except any Defendant who is specifically excluded by law from being liable for punitive damages.

## PRAYER FOR DAMAGES

1. For an award for all economic and noneconomic damages sustained by Plaintiff by reason of Defendants wrongful acts complained of herein;

2. For exemplary and punitive damages where allows by law;

3. For a permanent injunction enjoining discriminatory, unfair, and unlawful business practices;

4. For costs of suit incurred herein;

5. For attorneys' fees as allowed by law; and

6. For such other and further relief as the Court may deem equitable, necessary, and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial in this matter.

DATED this ___ day of September, 2018

WEISS LAW FIRM, PLLC

By *s/*
Reba Weiss
12537 15TH Ave. NE Ste. No. 108
Seattle, WA 98125-3979
(206) 508-0149 / Fax (206) 508-5933
reba@weisslawfirm.org

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Lisa Moore<br>13521 174th Street Court East<br>Fife, WA 98374 | From: | Seattle Field Office<br>909 First Avenue<br>Suite 400<br>Seattle, WA 98104-1061 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 551-2018-03512 | Alexandria Arbogast,<br>Investigator | (206) 220-6851 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____ for   August 29, 2018
Nancy A. Sienko,   *(Date Mailed)*
Director

Enclosures(s)

cc: THE BOEING CO
Attn: David J. Wuerch, E.E.O. Manager
P. O. Box 3707, M.C. 61-15 9 U/F E
Seattle, WA 98124

J. Adrian Zamora
HANEY & YOUNG LLP
1055 West Seventh Street, Suite 1950
Los Angeles, CA 90017